UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY REYNOLDS,<br><br>  Plaintiff,<br><br>  v.<br><br>APPLE INC.,<br><br>  Defendant. | Case No. 19-cv-05440-RS<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Larry Reynolds accuses Apple Inc. ("Apple") of unlawfully making available for streaming and downloading a number of songs in which he holds a valid copyright. Following the denial of its motion to dismiss on other grounds, Apple now puts forth evidence showing it properly licensed each song before distributing it. For the reasons set forth below, the motion for summary judgment is granted.

## II. BACKGROUND

Reynolds, a musician from Louisiana, contends Apple has engaged in a "digital music administrative campaign to reproduce and distribute" approximately seventy of Reynolds' songs without his authorization. Second Amended Complaint ("SAC") ¶ 10. Specifically, he alleges Apple did not file with him or the United States Copyright Office a Notice of Intent ("NOI") to reproduce his works and that Apple has not paid, or underpaid, royalties owed to him. He does acknowledge, however, that he has received some royalty payments from the Harry Fox Agency ("HFA"), a mechanical rights clearinghouse that licenses the musical compositions of musicians to

distributors. Reynolds provides Certificates of Registration for seven albums in which he owns valid copyrights: L.P. Reynolds Christmas, Tennessee Fever (Presidential Edition), L.P. Reynolds Bride for Doctor Levinstein, L.P. Reynolds Something New, L.P. Reynolds If You Don't Believe, L.P. Reynolds God Gave Love Today, and L.P. Reynolds and the Argonauts (collectively, the "Asserted Works").

## III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which it bears the burden of proof at trial. *Id.* at 322–23.

To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The trial court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991).

## IV. DISCUSSION

**A. Motion for Summary Judgment**

To establish a claim for copyright infringement, a plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). However, "[t]he existence of a license creates an affirmative defense to a claim of copyright infringement." *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000).

The distribution of any song implicates two separate copyrights – one in the musical composition and the other in the sound recording. The former "protects the generic sound that would necessarily result from any performance of the piece." *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1240 (C.D. Cal. 2002), *aff'd*, 349 F.3d 591 (9th Cir. 2003), *amended and superseded on denial of reh'g and aff'd*, 388 F.3d 1189 (9th Cir. 2004). The latter shields "the sound produced by the performer's rendition of the musical work." *Id.* at 1249–50. A distributing entity must obtain a license for each of these copyrights to distribute a sound recording lawfully.

Apple obtained sound recording and mechanical licenses from CD Baby and HFA, respectively, to distribute the works and paid all royalties due under these licenses.[1] CD Baby is an online purveyor of independent music that offers digital music distribution services. When artists opt into CD Baby's service, they can authorize CD Baby to license their music to other streaming and downloading services, including iTunes and Apple Music. From February 28, 2011 to November 14, 2017, Reynolds submitted all the Asserted Works to CD Baby and repeatedly executed with his digital signature CD Baby's standard artist agreement. The agreement granted a host of rights to CD Baby and its "Licensees," which is defined in the contract to include Apple. These include the non-exclusive right to "[r]eproduce and create derivative works of [the artist's] [c]ontent", "[p]ublicly perform, publicly display, communicate to the public, and otherwise make available [the artist's] [c]ontent", and "[a]uthorize . . . Licensees to perform any one or more of the

---

[1] Apple's records indicate only 17 of the Asserted Works were streamed through the third quarter of 2019 when this action was filed. One of Reynolds' songs was downloaded, though it is not among the Asserted Works. Because the other works were not "copied," they cannot form the basis of an infringement claim.

1   activities specified above[.]" Black Declaration Ex. 3. Similarly, on August 16, 2016, Reynolds,
2   acting on behalf of his publisher L.P. Reynolds Music and Film, agreed to Apple's Subscription,
3   Cloud and Lyrics Agreement using a click-through process hosted by HFA. By doing so, he
4   granted Apple "all necessary rights" to distribute the Asserted Works. Williams Declaration Ex. C.

5       Apple submits competent evidence showing each of the licenses was duly granted. The
6   declaration of Donna Marisa Black, a Rights and Compliance Specialist at CD Baby, indicates she
7   is qualified to authenticate business records. She confirms CD Baby licenses its clients' work to
8   Apple and attaches to her declaration a list of all the musical works, including the Asserted Works,
9   Reynolds has authorized CD Baby to distribute and license. A similar HFA declaration from John
10  Raso, Vice President of Client Services at HFA, states that HFA works with Apple and attaches a
11  screenshot of HFA's Agreement Portal indicating Reynolds opted into Apple's Subscription,
12  Cloud, and Lyrics Agreement. Though Reynolds stated at the hearing that he never provided his
13  electronic signature to either entity, he provides nothing beyond his unadorned denial in support.
14  He also acknowledges that he has received royalty checks from HFA and cashed some royalty
15  checks from CD Baby. He advances no other evidence disputing the validity of either license or
16  substantiating his claim that Apple exceeded the scope of either license.

17      By signing the CD Baby and HFA contracts, Reynolds authorized those entities and, by
18  extension, Apple, to distribute his music. Consequently, Apple was not obligated to file or serve
19  NOIs, which are only required when an entity seeks a compulsory license under section 115 of the
20  Copyright Act. Because Apple properly licensed the Asserted Works, it has not infringed on
21  Reynolds' copyrights. Its motion for summary judgment on the infringement claim is therefore
22  granted.

23      Reynolds also asserts he was not paid, or that he was underpaid, royalties. Apple explains
24  that it paid royalties to CD Baby, which, in turn, distributed to Reynolds his share of those
25  royalties. It had a similar arrangement with HFA – Apple paid mechanical royalties to HFA for
26  streams matched to Reynolds' publisher and HFA passed Reynolds' share on to him. When works
27  are not matched to a publisher, the case with "several" of the Asserted Works, Apple continually

re-processes the royalty payments until the work is matched. Motion at 8. Reynolds does not offer any evidence showing any royalties were incorrectly calculated or unlawfully withheld. Apple is therefore entitled to summary judgment on this claim as well.

### B. Other Motions

Apple has requested the entry of a protective order, a status conference to discuss discovery issues, and an extension of time to file a motion to compel discovery. Apple also seeks to seal a few exhibits related to royalty payments, an exhibit containing Apple's licensing agreement with HFA, and parts of the motion that refer to these exhibits. A few days before the hearing, Reynolds filed a motion for ruling and a motion to amend. Yesterday, Apple filed a motion for extension of time to respond to Reynolds' motions. Good cause appearing, the motion to seal is granted. All other motions are denied as moot.

## V. CONCLUSION

For the reasons set forth above, the motion for summary judgment is granted.

**IT IS SO ORDERED**.

Dated: September 3, 2021

RICHARD SEEBORG
Chief United States District Judge